John Meyer, MT Bar # 11206

Cottonwood Environmental Law Center

P.O. Box 412

Bozeman, MT 59771

(406) 546-0149

john@cottonwoodlaw.org

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | | |
|---|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER; | ) ) ) | Case No. |
| *Plaintiff,* | ) ) | |
| vs. | ) ) | |
| | ) | COMPLAINT FOR DECLARATORY |
| CH SP ACQUISITION LLC d/b/a SPANISH PEAKS MOUNTAIN CLUB; LONE MOUNTAIN LAND COMPANY, | ) ) ) ) | AND INJUNCTIVE RELIEF |
| | ) | |
| *Defendants,* | ) ) ) ) ) ) ) | |

# INTRODUCTION

1.     This case challenges Defendants CH SP Acquisition LLC d/b/a Spanish Peaks Mountain Club and Lone Mountain Land (collectively "Spanish Peaks") for violating the Clean Water Act ("CWA") and Montana's civil and criminal nuisance laws by unlawfully discharging nitrogen pollution that is responsible for causing/contributing to nuisance algae blooms in the West Fork of the Gallatin River, its tributaries, and the main stem of the Gallatin River.

2.   Defendant Spanish Peaks previously settled a Clean Water Act case with Cottonwood and agreed to replace the holding pond liner in its treated sewage pond. *Cottonwood Envtl Law Center v. Yellowstone Mountain Club*, *LLC,* 2:21-cv-00093-BMM-JTJ (Doc. 68).

3.     Defendant Spanish Peaks wrote Cottonwood a bad settlement check in the above-referenced case in the amount of $10,000.00. One of Spanish Peaks' law firms eventually wrote another check to Cottonwood that did not bounce.

4.     On November 4, 2022, Cottonwood sent Spanish Peaks a 60 Day Notice of Intent to Sue that described the Clean Water Act violations alleged in this complaint.

5.     In response, Spanish Peaks' law firms sent Cottonwood a letter on November 22, 2022, stating it would seek sanctions if Cottonwood filed this "frivolous and vexatious" lawsuit.

6.     On December 1, 2022, Plaintiff's counsel provided Spanish Peaks' counsel with video of the unlawful discharge and asked Spanish Peaks' counsel if it wanted to settle.

7.     Spanish Peaks' counsel never responded to Plaintiff's settlement query.

8.     Spanish Peaks' counsel never conveyed Plaintiff's settlement offer to Spanish Peaks.

9.     Plaintiff's settlement offer was reasonable in light of the video showing Spanish Peak's violations.

10.    Spanish Peaks violated the CWA by spraying treated sewage that originated in its holding pond into waters of the United States in order to drain the holding pond and replace the liner.

11.    Spanish Peaks violated the CWA by spraying treated effluent out of two pipes on the golf course into waters of the United States.

12.    Spanish Peaks' unlawful discharges cause and contribute to the nuisance algae blooms on the West Fork, its tributaries, and the main stem of the Gallatin River.

## JURISDICTION AND VENUE

13. This court has subject matter jurisdiction over the claims for violations of the CWA set forth in this Complaint pursuant to the CWA, 33 U.S.C. § 1365(a)(2). This cause of action arises under 33 U.S.C § 1365 (f)(1) as a violation of 33 U.S.C. § 1311(a).

14.     Defendants are in violation of the CWA by discharging pollutants without

a NPDES permit. The requested relief is proper under the CWA, 33 U.S.C 1365(a).

15.    As required by the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiffs provided Defendants with notice of its intent to sue more than sixty (60) days before filing this Complaint. Plaintiffs also notified the Administrator of the United States Environmental Protection Agency (EPA), and the Montana DEQ (MT DEQ) of its intent to sue.

16.    This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S. Code § 1367.

17.    The Montana civil nuisance claim is brought pursuant to Montana Code Annotated §27-30-103.

18.    The Montana criminal nuisance claim is brought pursuant to Montana Code Annotated §45-8-112(1).

19.    Venue in the United States District Court for the District of Montana is proper under 33 U.S.C. § 1365 (c) because the parties are located within this district.

## PARTIES

20.    Plaintiff COTTONWOOD ENVIRONMENTAL LAW CENTER is a conservation organization dedicated to protecting the people, forests, water, and wildlife in the American West. Cottonwood members use the Gallatin River and its watershed for fishing, swimming, rafting, photography, guiding, and consumption.

21.    Plaintiff's members use and enjoy the Gallatin River and its tributaries on a continuing and ongoing basis. Defendants' discharge of pollutants harms the Plaintiffs' aesthetic, recreational, conservation, and scientific interests.

22.    Plaintiff's members have devoted time, energy, and money to protecting water quality and fisheries, and monitoring the West Fork of the Gallatin River. Plaintiffs' members and supporters have suffered, and continue to suffer injury-in-fact on account of Defendant's CWA violations. The injury-in-fact is traceable to Defendants' conduct and would be redressed by the relief Plaintiffs seek.

23.    Defendant CH SP Acquisition LLC d/b/a Spanish Peaks Mountain Club is a residential, ski, and golf community located in the Big Sky area.

24.    Defendant Lone Mountain Land Company is the owner and operator of Spanish Peaks Mountain Club and treats the resort as a "project." https://www.lonemountainland.com/spanish-peaks (last visited March 15, 2023).

## LEGAL BACKGROUND

25.    "Congress enacted the CWA in 1948 with the goal of *eliminating* the discharge of pollutants in order to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *N. Cheyenne Tribe v. Mont. Dept. of Envtl. Quality*, 2010 MT 302, ¶ 21, 356 Mont. 296, 302, 234 P.3d 51, 55 (2010) (emphasis in original) (citing 33 U.S.C. §1251(a)). "Congress developed the NPDES [National Pollution Discharge Elimination System] permit system to achieve this goal." *Id*; (citing 33 U.S.C. §§1342 and 1311).

26.     The CWA requires a NPDES permit for each and every point source discharge into a navigable waterway.  33 U.S.C. § 1342.  "[T]he discharge of any pollutant by any person shall be unlawful" unless the discharge is made pursuant to and is authorized by a NPDES permit.  33 U.S.C. §§ 1311(a) and 1342(a). "The primary means for enforcing [water quality] limitations and standards is the NPDES [program]." *Arkansas v. Oklahoma*, 503 U.S. 91, 101-02 (1992).

27.     The CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

28.     The CWA defines "point source" as a "discernable, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well … from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

29.     The CWA broadly defines a "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

30.     The CWA defines "person" as "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

31.     The Environmental Protection Agency (EPA) administers NPDES

permits unless a state has enacted its own enforcement program, in which case EPA's

Administrator (Administrator) must have approved the state's program. 33 U.S.C. §

1342(a).  Montana has elected to administer its own permit program – the MPDES

program – which is under the control of the DEQ. Mont. Code Ann. §§ 75-5-402, 75-

5-211; A.R.M. 17.30.101, 17.30.1201. Once delegated to a state, the state "stands in

the shoes" of EPA, and states are obligated to implement all of the CWA's

requirements for the NPDES program. *N. Cheyenne*, ¶ 37.

32.    The citizen suit provision of the CWA authorizes "any citizen" to

"commence a civil action on his own behalf" in federal district court against any

person who is alleged to be in violation of "an effluent standard or limitation" of the

Act. 33 U.S.C. § 1365(a).

33.   "To establish a violation of the CWA, 'a plaintiff must prove that

defendants (1) discharged, i.e., added (2) a pollutant (3) to navigable waters (4) from

(5) a point source.'" *Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945 F.3d 1076, 1083

(9th Cir. 2019) (internal citation omitted).

34.    The Clean Water Act "forbids 'any addition' of any pollutant from 'any

point source' to 'navigable waters' without" a NPDES permit. *Cty. of Maui, Hawaii v.*

*Haw. Wildlife Fund*, 140 S. Ct. 1462, 1465 (2020) (internal citations omitted).

35.    The CWA defines "discharge of a pollutant" as "any addition of any

pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

36.    Nitrates + Nitrites as Nitrogen and Total Nitrogen are pollutants that are

regulated under the Clean Water Act.

37.    "Point source" is defined as "any discernible, confined and

discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel,

conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding

operation, or vessel or other floating craft, from which pollutants are or may be

discharged." *Id.* § 1362(14).

38.    Montana Code Annotated § 27-30-101 defines a civil "nuisance" as:

> Anything that is injurious to health, indecent or offensive to the
> senses, or an obstruction to the free use of property, so as to
> interfere with the comfortable enjoyment of life or property, or that
> unlawfully obstructs the free passage or use, in the customary
> manner, of any navigable lake, river, bay, stream, canal, or basin or
> any public park, square, street, or highway is a nuisance.

39.    Montana Code Annotated § 45-8-111(1)(a), MCA defines a criminal "public

nuisance" as:

(a)    a condition that endangers safety or health, is offensive to the
senses, or obstructs the free use of property so as to interfere with
the comfortable enjoyment of life or property by an entire
community or neighborhood or by any considerable number of
persons.

40.    Any resident of the State of Montana may bring an action in equity to enjoin a

criminal public nuisance pursuant to Section 45-8-112(1), MCA, 2021.

## FACTUAL BACKGROUND

41.    Defendant Spanish Peaks Mountain Resort owns and operates a treated

sewage holding pond that is not fenced. The treated sewage is sprayed on its golf course.

42.    Plaintiff Cottonwood Environmental Law Center filed a Clean Water Act lawsuit against Defendant Spanish Peaks on February 18, 2022. *Cottonwood Envtl Law Center v. Yellowstone Mountain Club LLC,* 2:21-cv-00093-BMM-JTJ (Doc. 18).

43.    The parties settled the case and Spanish Peaks agreed to replace the torn holding pond liner of its treated sewage pond as part of the consent decree. *Cottonwood Envtl Law Center v. Yellowstone Mountain Club*, *LLC,* 2:21-cv-00093-BMM-JTJ (Doc. 68).

44.    Spanish Peaks drained its holding pond on September 21st, 2022 to replace the liner by spraying the treated sewage from large industrial sprinklers/snowmakers into a tributary of the West Fork/Gallatin River.

45.    Spanish Peaks acknowledged it was polluting the tributary stream by placing a sign above the tributary at a pedestrian walking bridge labeling the tributary stream as reclaimed waste water and warning people not to drink it.





46.    The sprinklers/snow makers were point sources.

47.    The point sources discharged (added) pollutants directly into a tributary stream of the West Fork/Gallatin River.

48.    Spanish Peaks violated the Clean Water Act by spraying treated sewage from sprinklers/snow makers directly into a tributary stream of the West Fork/Gallatin River without a NPDES permit.

49.    Spanish Peaks also drained its holding pond by spraying treated sewage water out of pipes located on its golf course into tributary streams in violation of the Clean Water Act.

50.    The pipes located on holes #3 & #6 of the golf course are point sources.

51.    The pipe on hole #3 is between the men's and ladies' tees, under the second bridge.

52.    The pipe on hole #6 is about 20 feet short of the green.

53.    Spanish Peaks sprayed the treated sewage from the pipes at the end of the golf season into a tributary stream of the West Fork/Gallatin River located on the Spanish Peaks golf course without a NPDES permit in violation of the Clean Water Act.

54.    Defendant's pond-emptying practices caused nitrogen pollution (Nitrates + Nitrites as N and Total N) to be added to the stream and ultimately to be conveyed to the West Fork.

55.    When Spanish Peaks drained its holding pond it violated the Clean Water Act by spraying treated sewage from golf course pipes directly into tributary streams of the West Fork/Gallatin River without a NPDES permit.





56.     Plaintiff Cottonwood Environmental Law Center sent Defendant Spanish

Peaks a 60-Day Notice of Intent to Sue for the Clean Water Act violation on

November 4, 2022.

57.     Defendant Spanish Peaks Mountain Resort is adding Nitrates + Nitrites as

Nitrogen and Total Nitrogen into the West Fork of the Gallatin River by and through

their illegal irrigation and drainage practices.

58.     The West Fork of the Gallatin River is a water of the United States.

59.     Nitrate + Nitrite as N and Total Nitrogen as N are pollutants that are

regulated under the Clean Water Act.

60.     Excess nitrogen causes algae blooms in rivers and streams.

61.    Algae blooms harm aquatic ecosystems.

62.    Defendants' unlawful discharges have caused harm to the water quality of the West Fork of the Gallatin River and the Gallatin River itself.

63.    The West Fork and the Gallatin River below the West Fork have experienced significant algae blooms the last several years.

64.    Section 303(d) of the Federal Clean Water Act, and Title 40 part 130 of the Code of Federal Regulations requires each state to develop a list of waters that do not meet water quality standards (i.e., which do not fully support their beneficial uses).

65.    The MT Department of Environmental Quality placed the West Fork of the Gallatin River on the 303(d) list because of Nitrate + Nitrite as N and Total Nitrogen.

66.    Defendants are directly discharging Nitrate + Nitrite as N into a tributary of the West Fork of the Gallatin River.

67.    The unlawful discharges harm plaintiff's members' aesthetic, recreational, conservation, and scientific interests in the water quality, aquatic species, and the health of the Gallatin River watershed, including the West Fork of the Gallatin River.

68.    Defendants' unlawful discharges cause algae blooms in the West Fork of the Gallatin River, its tributaries, and the Gallatin River generally.

69.    The algae blooms caused by Defendants' unlawful discharges are offensive to the

senses and obstruct Cottonwood members and the larger community of Southwest Montana's use of the waters for fishing, swimming, boating, and other recreational activities.

## CLAIMS FOR RELIEF

### Count I: Violation of Clean Water Act

70.    Plaintiff realleges and incorporate by reference all preceding paragraphs.

71.    Defendant has violated and continues to violate section 301 of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants, including Nitrite + Nitrate as N and Total Nitrogen, into the West Fork of the Gallatin River from point sources, including the point sources described above, without an NPDES permit.

### Count II: Violation of Public Nuisance Law

72.    Plaintiff realleges and incorporate by reference all preceding paragraphs.

73.    Defendants' unpermitted and unlawful discharge of treated sewage from the golf course pipes and snow-making/spraying equipment into tributaries of the West Fork and ultimately the Gallatin River is a public nuisance as defined by MCA §27-30-101(1), 2021.

74.    The unlawful and unpermitted discharges are a "nuisance" in violation of § 27-30-101, MCA, 2021 because the resulting green algae blooms are offensive to the senses and obstruct the free use of the West Fork and main stem of the Gallatin River for swimming, boating, rafting, and fishing in a way that interferes with the comfortable enjoyment of life.

75.    Defendant's activities are a nuisance to Cottonwood members and the good people of Montana.

## Count III: Violation of Criminal Nuisance Law

76.    Plaintiff realleges and incorporate by reference all preceding paragraphs.

77.    Defendants' unpermitted and unlawful discharges of treated sewage from the golf course pipes and snow-making/spraying equipment into tributaries of the West Fork and ultimately the Gallatin River are a criminal nuisance in violation of MCA §45-8-111.

78.    The unpermitted discharges are a criminal nuisance because the resulting algae is offensive to the senses of Cottonwood members and the community. MCA § 45-8-111(1)(a).

79.    The unpermitted discharges are a criminal nuisance because the resulting algae obstructs the free use of the West Fork and main stem of the Gallatin River so as to interfere with the comfortable enjoyment of life for Cottonwood members and the community. MCA §45-8-111(1)(a).

80.    Defendant's activities are a nuisance to Cottonwood members and the good people of Montana.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court grant the following relief:

A.    Declare, hold, and adjudge that Defendants have violated and continue to violate the Clean Water Act by discharging pollutants to navigable waters without an NPDES permit.

B.    Declare, hold, and adjudge that Defendants have violated, and continue to violate, civil and criminal nuisance laws by unlawfully discharging treated sewage into the West Fork, its tributaries, and ultimately the main stem of the Gallatin River, which causes or contributes to nuisance algae blooms.

C.    Enjoin Defendants from further discharging pollutants into the West Fork of the Gallatin and any other water of the United States except as expressly authorized by the CWA and the limitations and conditions of an applicable NPDES Permit.

D.    Enjoin Defendant Lone Mountain Land from selling any property in Spanish Peaks until there is a publicly accessible system that tracks in real time when, where, and what volume of treated effluent is disposed of by the Resort and its golf course.

E.    Enjoin any sewer within Spanish Peaks Mountain Resort from being connected to the Big Sky Water and Sewer District until there is a publicly accessible system that tracks in real time when, where, and what volume of treated effluent is disposed of by the Resort and its golf course.

F.    Order Defendant to take actions to remediate environmental harm caused by their unlawful actions.

G.    Order Defendant to remove any existing infrastructure that connects the treated sewage pond at Hole 10 to sprinklers/snow making equipment.

H.    Order Defendant to pay civil penalties, monitoring, and remediation costs.

I.    Award damages for the civil and criminal nuisances.

J.    Award Plaintiff its reasonable litigation costs and expenses, including attorney and expert fees, incurred in bringing this action.

K.    Award such other relief as the Court may deem just and proper.

DATED this 3rd day of May, 2023.

Respectfully Submitted,

/s/ John Meyer
JOHN MEYER, MT Bar # 11206
Cottonwood Environmental Law Center
P.O. Box 412 Bozeman, MT 59771
(406) 546-0149 | Phone
John@cottonwoodlaw.org

*Counsel for Plaintiff*