IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER,<br><br>      Plaintiff,<br><br>v.<br><br>CH SP ACQUISITION LLC d/b/a SPANISH PEAKS MOUNTAIN CLUB; LONE MOUNTAIN LAND COMPANY,<br>      Defendants. | CV-23-28-BU-BMM<br><br>**ORDER** |

# INTRODUCTION

Defendants CH SP Acquisition LLC d/b/a Spanish Peaks Mountain Club ("Spanish Peaks") and Lone Mountain Land Company ("LMLC") (collectively "Defendants") filed a motion for summary judgment on October 20, 2023. (Doc. 39.) Cottonwood Environmental Law Center ("Cottonwood") opposes this motion. (Doc. 47); (Doc. 49.) Cottonwood filed a motion for a preliminary injunction on December 1, 2023. (Doc. 58.) Defendants oppose this motion. (Doc. 66.) The Court conducted a hearing on the motions in Butte, Montana on December 7, 2023. (Doc. 54.)

## FACTUAL AND LEGAL BACKGROUND

The facts mirror those presented in the Court's previous order. (Doc. 63.) Cottonwood asserts that Spanish Peaks discharges nitrogen pollution into the West Fork of the Gallatin River and its tributaries, and that this discharge causes and contributes to algae blooms in those waters. (Doc. 33 at 2.) Cottonwood claims that Defendants use sprinklers and snowmakers situated on or around ski runs to discharge treated wastewater. (*Id.* at 12.)

Cottonwood further alleges that Defendants flush the Spanish Peaks Golf Course irrigation system once per year using pipes located on the Spanish Peaks Golf Course. (*Id.*) Cottonwood contends that these pipes, when flushed, spray treated sewage into a stream of the West Fork of the Gallatin River without an NPDES permit in violation of the Clean Water Act ("CWA"). (*Id.*) Cottonwood alleges that Defendants have sprayed treated wastewater from these point sources, and that they likely will continue to spray treated wastewater from these point sources in the future. (*Id.* at 12-13.)

Cottonwood asserts three claims for relief: 1) violation of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a); 2) violation of Montana public nuisance law, Mont. Code Ann. § 27-30-101(1); and 3) violation of Montana criminal nuisance law, Mont. Code Ann. § 45-8-111. (*Id.* at 16-17.) The Court previously granted Defendants' motion to stay discovery and request for an expedited ruling. (Doc. 63.)

2

## LEGAL STANDARD

The Court will grant summary judgment when the moving party demonstrates both an absence of material facts or issues and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The summary judgment inquiry requires examining the evidence, and inferences drawn therefrom, in the light most favorable to the nonmovant. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014.) Once the movant has met this initial burden, however, the party opposing the motion "may not rest upon the mere allegations or denials of [thier] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 447 U.S. at 323.

## DISCUSSION

Defendants raise four arguments in support of their motion for summary judgment: 1) Cottonwood released its CWA claims when it settled *Cottonwood*

*Environmental Law Center, et al., v. Yellowstone Mountain Club*, LLC, No. 2:21-cv-00093-BMM-JTJ (D. Mont.) (*Cottonwood I*); 2) the doctrine of res judicata bars Cottonwood's claims; 3) Cottonwood's CWA claims is barred because it involves only wholly past violations; and 4) Cottonwood lacks standing to assert its public nuisance claims. (Doc. 41 at 13, 16, 21, 24.) The Court need not reach all of these arguments because the Court determines that the *Cottonwood I* consent decree bars Cottonwood's CWA claim. Cottonwood has conceded its Montana law based public nuisance claims.

## I. Cottonwood's CWA claim.

The doctrine of claim preclusion bars a successive action under the following circumstances: 1) the previous action resulted in a final judgment on the merits; 2) the present action is between "identical parties or privies;" and 3) the present and prior action concern "the same 'claim' or cause of action." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (quoting *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002)). A court must modify the claim preclusion inquiry where the prior action has been dismissed with a release, consent order, or other settlement agreement. *See U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 913 (4th Cir. 2013).

A court must look to the intent of the settling parties when the issue of claim preclusion stems from a release or settlement agreement. *Wojciechowski v. Kohlberg*

*Ventures, LLC*, 923 F.3d 685, 689 (9th Cir. 2019). The settlement agreement itself provides the best evidence of the parties' intent. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004). Courts interpret settlement agreements through the lens of traditional contract principles. *Id.*

"Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999) *as amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000). When a court dismisses an action because of a settlement, the settlement and release of claims "is stamped with the imprimatur of [a] court with jurisdiction over the parties and the subject matter of the lawsuit," and becomes a final judgment. *Wojciechowski*, 923 F.3d 685 at 690. The Court's analysis revolves around three separate documents: 1) the *Cottonwood I* sixty-day notice letter of alleged CWA violations to Spanish Peaks; 2) the amended complaint in *Cottonwood I*; and 3) the consent order entered by the parties in *Cottonwood I*.

The *Cottonwood I* consent order provides in pertinent part that the "Order effectuates a full and complete settlement and release of all the claims against Defendant in Plaintiffs' Amended Complaint (Doc. 20) and sixty- day notice letter (Doc. 41-1)." *Cottonwood I* (Doc. 68 at 2.) The settlement also covered *"all other claims known and unknown that could be asserted under the Clean Water Act . . .*

5

based on the factual allegations made in the Amended Complaint and sixty-day notice letter (the "Claims")." (*Id.*) (emphasis added). The parties agreed that "Enforcement of this Order [represents] the Parties' exclusive remedy for any violation of its terms and conditions. (*Id.*) The consent decree resolved the claims presented in the amended complaint in *Cottonwood I*. The Court looks next to the amended complaint.

The *Cottonwood I* amended complaint alleged that Spanish Peaks was "adding Nitrates + Nitrites as Nitrogen and Total Nitrogen into the West Fork of the Gallatin River." *Cottonwood I* (Doc. 20 at 8.) The amended complaint alleged that Spanish Peaks added these pollutants "by overirrigating its golf course with treated effluent, by spraying treated wastewater into drains on the golf course, by irrigating when the grass is frozen, and by failing to maintain its treated sewage pond and related equipment." (*Id.*) The amended complaint identified as point sources the "golf course and related equipment, including but not limited to sprinklers and drains, in addition to the wastewater holding pond and related equipment." (*Id.*)

The Court finally reviews the sixty-day notice letter of alleged CWA violations provided by Cottonwood to Spanish Peaks. The *Cottonwood I* sixty-day notice letter broadly identified the CWA violations as emanating from "a stream entering the Middle Fork [of the Gallatin River] that appears to originate on the Spanish peaks golf course . . .." (Doc. 40-1 at 11-12.) Cottonwood informed that

"the Stream appears to begin at the Spanish Peaks Mountain Club." (*Id.*) Cottonwood alleged that Spanish Peaks "is discharging pollutants to navigable waters without an NPDES permit in violation of the [CWA]." (*Id.*) Cottonwood further identified the effluent holding ponds and associated infrastructure at Spanish Peaks as "contributing to the issue." (*Id.*)

Cottonwood now seeks to assert a CWA claim that could have been brought in *Cottonwood I*. This action and *Cottonwood I* both concern alleged discharge of treated wastewater by Spanish Peaks. Cottonwood alternately describes the treated wastewater as "reclaimed water" or "treated sewage." (Doc. 41 at 8) (citation omitted). The Court must agree with Defendants that the treated wastewater here and the treated wastewater in *Cottonwood I* originate from the same source: the Hole 10 pond. (*Id.* at 9.) The same treated wastewater, stored in the Hole 10 pond, traveled through the same pipe infrastructure on the Spanish Peaks Golf Course in *Cottonwood I* and in this action. The treated wastewater allegedly enters a tributary stream of the Gallatin River in violation of the CWA in both *Cottonwood I* and in this action.

Cottonwood contends that its new CWA claim exceeds the scope of the *Cottonwood I* consent order. (Doc. 47 at 8.) Cottonwood argues that its current CWA claim concerns snowmakers and golf course pipe infrastructure as the point sources for the treated wastewater. (*See id.* at 8-11.) Cottonwood suggests that these point

sources differ from the point sources alleged in Cottonwood's CWA claims in *Cottonwood I*. The Court disagrees.

The Court has reviewed the Montana Department of Environmental Quality's ("DEQ") Nutrient Management Plan ("NMP") for Spanish Peaks in September 2021 ("2021 NMP"). (Doc. 40-1 at 35-36.) The 2021 NMP authorizes Spanish Peaks to irrigate using treated wastewater in three areas: 1) Forested Areas; 2) Par 3 Golf Course; and 3) Hotel and Cabins. (*Id.* at 36.) DEQ approved the 2021 NMP on July 20, 2021. (*Id.* at 35.) DEQ authored a separate letter on September 15, 2021, in which DEQ approved the irrigation plan for Spanish Peaks. (*Id.* at 31.) DEQ's approval included an expansion of irrigation operations into "naturally forested areas adjacent to existing golf course irrigation sites," ("2021 DEQ approval"). (*Id.*)

Cottonwood sent its sixty-day notice letter to Spanish Peaks in *Cottonwood I* on November 5, 2021. (Doc. 40-1 at 11-12.) Both the 2021 NMP and the 2021 DEQ approval predate *Cottonwood I*'s sixty-day notice letter. (*See id.* at 9.) DEQ approved the NMP on July 20, 2021. (Doc. 40-1 at 35.) DEQ approved the irrigation plan for Spanish Peaks on September 15, 2021. (*Id.* at 31.) Cottonwood knew, or could have known, of these activities at the time that it entered the Consent Decree on November 5, 2021. Cottonwood's CWA claim in this action represents a claim that similarly could have been known during *Cottonwood I* based on the 2021 NMP and the 2021 DEQ approval.

8

Cottonwood now attempts to challenge Spanish Peaks' irrigation practices and use of treated wastewater in a piecemeal manner that proves inconsistent with the express terms of the *Cottonwood I* consent order. The *Cottonwood I* consent order served as a negotiated settlement that released "*all the claims* against Defendant in Plaintiffs' Amended Complaint (Doc. 20) and sixty- day notice letter (Doc. 41-1), *and all other claims known and unknown* that could be asserted under the [CWA] based on the factual allegations made in the Amended Complaint and sixty-day notice letter." *Cottonwood I* (Doc. 68 at 3) (emphasis added).

The Court must acknowledge that both Cottonwood and Spanish Peaks are sophisticated parties, represented by counsel, who engaged in good faith negotiations that culminated in the *Cottonwood I* consent order. The *Cottonwood I* consent order appears to contain no reservation of right for Cottonwood to bring suit for an alleged CWA violation arising from the same set of facts. *See* (*id.*) The *Cottonwood I* consent order instead provides Cottonwood with the opportunity to enforce the consent order if Cottonwood first files a complaint with DEQ and DEQ fails to act on that complaint for six months. (*Id.* at 3.)

The Court declines to extend the *Cottonwood I* consent order, however, to cover all potential CWA claims raised by any party arising from alleged pollution of the West Fork of the Gallatin River by Spanish Peaks due to its use of treated wastewater for irrigation. The Court's determination that the *Cottonwood I* consent

9

order bars Cottonwood from bringing its CWA claim in this action rests on the conclusion that Cottonwood knew, or could have known, about alleged discharge of treated wastewater from snow makers and sprinklers by Spanish Peaks, and the alleged flushing of the Spanish Peaks Golf Course pipe infrastructure, before and during the *Cottonwood I* action.

The *Cottonwood I* consent order would not bar allegations brought by other groups or persons who were not parties to the consent decree. Other groups or persons remain free to allege CWA violations against Spanish Peaks. In fact, Cottonwood also remains free to allege CWA violations against Spanish Peaks, distinguishable from the facts alleged in *Cottonwood I*, even if such allegations related to the alleged pollution of the same West Fork of the Gallatin River and its associated tributaries. Cottonwood voluntarily elected to forego only those allegations related to the facts alleged in *Cottonwood I* when it entered the consent order. *See Cottonwood I* (Doc. 68.)

## II. Res judicata and Cottonwood's public nuisance claims

The Court need not address Defendants' res judicata claims in light of the broad language of the *Cottonwood I* consent order than bars Cottonwood's CWA complaint. Cottonwood conceded its public nuisance claims in response to Defendants' motion for summary judgment. (*See* Doc. 47 at n.1) ("Cottonwood concedes its public nuisance claims in light of the Court's Order (filed 10/25/23) in

*Cottonwood Environmental Law Center v. Yellowstone Mountain Club, LLC*, Cause No. CV-23-26-BU-BMM.") Cottonwood's public nuisance claims will be dismissed.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Defendants' motion for summary judgment (Doc. 40) is **GRANTED**. The terms of the *Cottonwood I* consent decree bar Cottonwood's CWA claim. Cottonwood conceded its Montana public nuisance claims.

2. The Clerk shall enter judgment in favor of the Defendants.

3. Cottonwood's motion for a preliminary injunction (Doc. 58) is **DENIED as moot**.

DATED this 20th day of December 2023.

Brian Morris, Chief District Judge
United States District Court