# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

COTTONWOOD ENVIRONMENTAL
LAW CENTER,

|                         | **CV-23-28-BU-BMM** |

                    Plaintiff,

          v.

                                                    **ORDER**

CH SP ACQUISITION LLC d/b/a
SPANISH PEAKS MOUNTAIN CLUB;
LONE MOUNTAIN LAND COMPANY,
LLC,

                    Defendants.

## INTRODUCTION

Plaintiff Cottonwood Environmental Law Center ("Cottonwood") filed an interim motion for a preliminary injunction pending appeal on December 22, 2023. (Doc. 70.) Defendants CH SP Acquisition LLC d/b/a Spanish Peaks Mountain Club ("Spanish Peaks") and Lone Mountain Land Company, LLC ("LMLC") (collectively "Defendants") oppose this motion. (Doc. 76.) Defendants pray additionally that the Court prohibit Cottonwood from filing any future motions for an injunction or temporary restraining order seeking to enjoin irrigation without prior leave of the Court. (*Id.* at 1.) The Court conducted a motions hearing on February 5, 2024. (Doc. 81.)

## FACTUAL BACKGROUND

The facts remain the same as the facts in the Court's previous orders. (*See* Doc. 67 at 2); (Doc. 63 at 2-3.) Cottonwood asserts that Spanish Peaks discharges nitrogen pollution into the West Fork of the Gallatin River and its tributaries, and that this discharge causes and contributes to algae blooms in those waters. Cottonwood claims that Spanish Peaks discharges treated wastewater using sprinklers and snowmakers situated on or around ski runs. Cottonwood further alleges that Defendants flush the Spanish Peaks golf course irrigation system once per year using pipes located on the Spanish Peaks golf course.

Cottonwood prays that the Court enjoin Defendants from the following actions: "1) spraying treated wastewater from their industrial snowguns; 2) blowing out treated wastewater from their irrigation pipes into a tributary of the West Fork [of the Gallatin River] at the end of the golf season; and 3) connecting any sewer within Spanish Peaks Mountain Resort to the Big Sky Water and Sewer District while the Ninth Circuit considers the appeal in this case." (Doc. 71 at 3.) Cottonwood prays further that the Court enjoin Defendants from spraying treated sewage toward any stream and on any slope greater than 25 degrees until the Ninth Circuit decides Cottonwood's appeal. (Doc. 80 at 10.) Defendants oppose Cottonwood's motion for an injunction pending appeal. (Doc. 76.) Defendants pray additionally that the Court

restrict Cottonwood's ability to file future motions for an injunction or a temporary restraining order in this case. (*Id.* at 7-10.)

## LEGAL BACKGROUND

The Court previously granted Defendants' motion for summary judgment (Doc. 67) and Defendants' motion to stay discovery. (Doc. 63.) The Court determined that the terms of the consent decree in *Cottonwood Environmental Law Center, et al., v. Yellowstone Mountain Club*, LLC, No. 2:21-cv-00093-BMM-JTJ (D. Mont.) ("*Cottonwood I*") barred Cottonwood's Clean Water Act ("CWA") claim in this action. (Doc. 67 at 11.) The Court noted further that Cottonwood conceded its Montana public nuisance claims in this action. (*Id.*) Cottonwood filed a notice of appeal on December 21, 2023. (Doc. 69.)

## LEGAL STANDARD

Fed. R. Civ. P. 62(d) permits a district court to grant an injunction while an appeal is pending from an interlocutory order or final judgment. "The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 367 (9th Cir. 2016). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).

The Ninth Circuit also employs a "sliding scale" approach under which a preliminary injunction may be granted "when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). The sliding scale approach requires additionally that a plaintiff satisfy all the other *Winter* factors. *Id.* A preliminary injunction proves to be an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter,* 555 U.S. at 22.

The All Writs Act, 28 U.S.C. § 1651(a), grants district courts the inherent authority to regulate the activities of abusive litigants by imposing pre-filing restrictions. *Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d 1057, 1061 (9th Cir. 2014). The Court recognizes that restricting access to the courts proves to be a serious matter, as "[t]he right of access to the courts is a fundamental right protected by the Constitution." *Id.* (quoting *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir.1998)). Courts in the District of Montana have noted that pre-filing restrictions represent an extreme remedy that is rarely appropriate. *See Kelly v. Boone Karlberg P.C.*, No. CV 22-174-M-DLC-KLD, 2023 WL 4704441, at *2 (D. Mont. July 24,

4

2023), report and recommendation adopted sub nom. *Kelly v. Boone Karlberg P.C.*, No. CV 22-174-M-DLC, 2023 WL 7211711 (D. Mont. Nov. 2, 2023).

## DISCUSSION

The Court will discuss first Cottonwood's motion for an injunction pending appeal. The Court will then consider Defendants' prayer for the Court to enter a pre-filing order restricting Cottonwood's ability to file motions for a preliminary injunction or motions for a temporary restraining order.

### I.    Cottonwood's motion for an injunction pending appeal.

Cottonwood asserts that it has met its burden under either the *Winter* factors or under the sliding-scale approach. (Doc. 71 at 2.) The Court disagrees. Cottonwood has failed to demonstrate that it is likely to prevail on the merits as required by *Winter*. 555 U.S. at 20. Cottonwood also has failed to raise serious questions going to the merits of the case and failed to demonstrate that the balance of hardships tip sharply in its favor. *All. for the Wild Rockies*, 632 F.3d at 1134. The Court determines that Cottonwood has failed to present sufficient evidence that the terms of the *Cottonwood I* consent order do not bar its CWA claim.

Cottonwood argues that the *Cottonwood I* consent order does not bar its challenge to Spanish Peaks's alleged spraying of treated wastewater through snowguns and sprinklers and blowing out the pipe system at the Spanish Peaks golf course. (Doc. 71 at 3-4.) The Court recognizes that the *Cottonwood I* consent order

provides in pertinent part that the "Order effectuates a full and complete settlement and release of all the claims against Defendant in Plaintiffs' Amended Complaint (Doc. 20) and sixty- day notice letter (Doc. 41-1)." *Cottonwood I* (Doc. 68 at 2.) The *Cottonwood I* consent order also covers "all other claims known and unknown that could be asserted under the Clean Water Act . . . based on the factual allegations made in the Amended Complaint and sixty-day notice letter (the "Claims")." (*Id.*)

Cottonwood repeats its argument that the *Cottonwood I* consent order narrowly applies only to claims concerning the Spanish Peaks golf course. (Doc. 71 at 4.) The Court previously rejected Cottonwood's similar argument because the broad terms of the *Cottonwood I* consent order covers "all other claims known and unknown that could be asserted under the Clean Water Act . . . based on the factual allegations made in the Amended Complaint and sixty-day notice letter." *Cottonwood I* (Doc. 68 at 2.) The Court will discuss first Cottonwood's claims as they concern pipe infrastructure. The Court will then consider Cottonwood's claims as they concern snowmakers and sprinklers.

### A. Whether the *Cottonwood I* consent order bars Cottonwood's claims concerning pipe discharge.

Cottonwood's 60-day notice letter concerns the alleged discharge of wastewater from pipe infrastructure on the Spanish Peaks golf course, amongst other claims. (*See* Doc. 40-1 at 40-45.) Cottonwood's amended complaint alleges similarly that Spanish Peaks sprayed treated wastewater from two pipes on the

6

Spanish Peaks golf course. (Doc. 33 at 3.) The *Cottonwood I* amended complaint similarly concerns the Spanish Peaks golf course pipe and drainage infrastructure. The *Cottonwood I* amended complaint provides in pertinent part, "[t]he Spanish Peaks golf course and related equipment, including but not limited to sprinklers and drains, are point sources." *Cottonwood I* (Doc. 20 at 6.)

It is true, admittedly, that the *Cottonwood I* amended complaint focuses more on alleged overirrigation practices on the Spanish Peaks golf course and an allegedly deficient treated wastewater holding pond. (*See id.* at 3-7.) Cottonwood's attempt to assert CWA claims in this action stemming from the Spanish Peaks golf course and related pipe infrastructure proves unpersuasive. The factual allegations in *Cottonwood I* and in this case both concern pipe and drainage infrastructure on the Spanish Peaks golf course. *Compare* Cottonwood I (Doc. 20 at 6); (Doc. 40-1 at 40-45); (Doc. 33 at 3.) Cottonwood's attempt to assert piecemeal CWA violations does not comport with the intent of the *Cottonwood I* consent decree.

The *Cottonwood I* consent decree releases "all other claims known and unknown that could be asserted under the Clean Water Act . . . based on the factual allegations made in the Amended Complaint and sixty-day notice letter." *Cottonwood I* (Doc. 68 at 2) (internal citations omitted.) A court must look to the intent of the settling parties when the issue of claim preclusion stems from a release or settlement agreement. *Wojciechowski v. Kohlberg Ventures, LLC*, 923 F.3d 685,

689 (9th Cir. 2019). The settlement agreement itself provides the best evidence of the parties' intent. *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1289 (11th Cir. 2004). Courts interpret settlement agreements through the lens of traditional contract principles. *Id.*

Cottonwood takes issue with the fact that counsel for Spanish Peaks failed to correct the statement of Cottonwood's counsel at the December 7, 2023 motion hearing that Spanish Peaks operates only one golf course. (Doc. 81.) The Court recognizes that Spanish Peaks operates two golf courses: one 18-hole, par 72 course ("The Spanish Peaks golf course") and one 10-hole, par 3 course ("the Par 3 Course"). *See* Spanish Peaks Mountain Club, "Golf - Spanish Peaks Mountain Club," https://spanishpeaks.com/golf/ (last visited February 6, 2024). Cottonwood directs the Court's attention to the motion hearing held on December 7, 2023. (Doc. 81.) The transcript of that motion hearing provides in pertinent part:

> The Court: Well, hold on. This Par 3 golf course, is this the only golf course on Spanish Peaks?
>
> Mr. Meyer [counsel for Cottonwood]: Yes, Your Honor.

(*Id.* at 3.) Cottonwood's argument, even if fully credited, likely proves harmless.

Cottonwood's sixty-day notice letter in this action, dated November 4, 2022, appears to indicate the alleged discharge sites as being located on holes #3 and #6 of the Spanish Peaks golf course. (Doc. 40-1 at 41.) Cottonwood included photos taken near the pipes alleged to be near hole #3 and hole #6 on the Spanish Peaks golf

course. (*Id.* at 41-44.) Cottonwood also included photos that appear to be taken from the Google Earth service and contain user-generated markings that appear to indicate the pipe discharge sites. (*Id.* at 43, 45.) These photos place the pipe infrastructure in question on the Spanish Peaks golf course. These photos do not appear to place the pipe infrastructure at issue on the Par 3 golf course. Any confusion on the part of Cottonwood or the Court as to the number of golf courses on Spanish Peaks's property proves harmless because there appears to be consensus as to the location of the pipe infrastructure at issue in both *Cottonwood I* and in this action.

### B. Whether the *Cottonwood I* consent order bars Cottonwood's claims concerning snowguns.

Cottonwood contends that its allegations concerning the use of snowmaking equipment by Spanish Peaks to discharge treated wastewater could not have been asserted in *Cottonwood I* because Cottonwood did not allege facts regarding such activities in the prior case. (Doc. 71 at 8.) Cottonwood further asserts that the alleged snowgun spraying did not occur until after the parties had submitted the consent decree for approval. (*Id.*) Cottonwood argues that these issues rise to the level of "serious questions" going to the merits of the case as required by *All. for the Wild Rockies*, 632 F. 3d at 1134. (Doc. 71 at 9.) The Court disagrees.

Cottonwood largely fails to assert any new facts in bringing this motion for an injunction pending appeal. The facts remain the same as the facts previously presented: Cottonwood challenges the alleged spraying of treated wastewater from

9

snowguns and the alleged flushing of pipe infrastructure on the Spanish Peaks golf course. The Court previously denied Cottonwood's motion for an injunction as moot and granted summary judgment for Spanish Peaks based on the same or substantially similar factual allegations. (*See* Doc 67.)

It is true, admittedly, that Cottonwood newly has alleged that Spanish Peaks operates two golf courses: the Spanish Peaks golf course and the Par 3 Course. Cottonwood claims that the 2017 Nutrient Management Plan ("NMP") approved by the Montana Department of Environmental Quality ("DEQ") governs irrigation activities on the Spanish Peaks golf course. By contrast, the 2021 NMP approved by DEQ governs irrigation activities on the Par 3 Course and on related surrounding areas. (Doc. 71 at 3.) Cottonwood contends that the existence of separate NMPs, with separate discharge allowances, amounts to a significant difference from the activities challenged in *Cottonwood I*. (*Id.*) Cottonwood's arguments might prove true, but they fail to fulfill the *Winter*, 555 U.S. at 20, factors, and fail similarly to raise the existence of serious questions going to the merits. *All. for the Wild Rockies*, 632 F.3d at 1134.

The *Cottonwood I* consent decree provides that Cottonwood agreed to a "full and complete settlement and release of all the claims against Defendant in Plaintiffs' Amended Complaint (Doc. 20) and sixty- day notice letter (Doc. 41-1)." *Cottonwood I* (Doc. 68 at 2.) The *Cottonwood I* sixty-day notice letter broadly challenged Spanish

Peaks's alleged discharge of pollutants into a tributary of the Gallatin River. *Cottonwood I* (Doc. 41-1 at 4.) The sixty-day notice letter identified a stream carrying nitrogen pollution into a Gallatin River tributary that appeared to begin at the Spanish Peaks Mountain Club. (*Id.* at 5.)

The *Cottonwood I* amended complaint proves similarly broad. *Cottonwood I* (Doc. 20.) The *Cottonwood I* amended complaint alleges that "Spanish Peaks' golf course and related equipment, including but not limited to sprinklers and drains, are point sources." (*Id.* at 6.) The *Cottonwood I* amended complaint also mentions an allegedly polluted stream running through the Spanish Peaks golf course that served as a conduit for pollution to be conveyed to the West Fork of the Gallatin River. (*Id.* at 7.)

Cottonwood's narrow interpretation of the *Cottonwood I* consent order as applying only to alleged overirrigation on the Spanish Peaks golf course and to a treated wastewater holding pond fails to find support in the record. Cottonwood's attempt to distinguish alleged spraying of treated wastewater from snowguns does not comport with Cottonwood's broad factual allegations in the *Cottonwood I* sixty-day notice letter and amended complaint. *Cottonwood I* (Doc. 40-1); (Doc. 20.) These documents, incorporated into the *Cottonwood I* consent order, appear to allege broadly a spraying and polluting program or scheme that includes the irrigation equipment on the Spanish Peaks golf course, the treated wastewater holding pond,

and related and associated pipe infrastructure, drainage infrastructure, and sprinkler infrastructure. (*See id.*) Cottonwood's argument, taken to its extreme, would allow a party to settle a CWA claim alleging sprinklers as a point source, and then bring a subsequent CWA suit alleging that a watering hose, pulling from the same source at the same moment in time or at a moment substantially close to the prior time as the sprinklers, amounts to a new and distinct CWA violation. The Court declines to endorse such an interpretation in light of the *Cottonwood I* consent decree.

The Court further recognizes the existence of both the 2017 NMP and the 2021 NMP. (*See* Doc. 40-1 at 28-29 (2017 DEQ Approval), 30-31 (2021 DEQ Approval)); (*see also* Doc. 61-5 (2021 NMP)). Cottonwood seemingly argues that it remained unaware of the 2021 NMP when it filed *Cottonwood I* and subsequently entered the *Cottonwood I* consent order. (Doc. 71 at 5-8.) This argument proves unpersuasive due to the public availability of both the 2017 NMP and the 2021 NMP before Cottonwood entered the *Cottonwood I* consent order.

DEQ approved the 2017 NMP on March 30, 2017. (Doc. 40-1 at 28.) It similarly appears that DEQ approved the 2021 NMP on September 15, 2021. (*Id.* at 31); (Doc. 65-1 at 2.) The 2017 NMP and the 2021 NMP predate the settlement of the *Cottonwood I* action through the filing of the consent decree. Cottonwood filed its complaint in *Cottonwood I* on January 9, 2021. *Cottonwood I* (Doc. 1.) The parties filed a joint motion to dismiss Spanish Peaks on September 16, 2022.

12

*Cottonwood I* (Doc. 60.) The Court entered the *Cottonwood I* consent order on November 16, 2022. *Cottonwood I* (Doc. 68.)

The Court lastly recognizes that Cottonwood seeks equitable relief in this motion in the form of an injunction pending appeal. (Doc. 71 at 16); (Doc. 80 at 9.) Equity aids the vigilant. *See, e.g.*, *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 798 (4th Cir. 2001). The Court, as noted above, broadly construes the *Cottonwood I* consent order, sixty-day notice letter, and amended complaint, based on the express terms of these documents. Cottonwood likely could have asserted more specific allegations concerning the use of snowguns as discharge points in *Cottonwood I* based on the prior existence of the publicly available 2021 NMP. The ability to assert such allegations, but failure to do so either intentionally or unintentionally, cuts against Cottonwood's claims for equitable relief, and instead supports the Court's conclusion that the *Cottonwood I* consent order bars Cottonwood's CWA claim in this suit. Cottonwood could have alleged claims concerning snowguns based on the factual allegations levied. (*See* Doc. 67 at 8.) Cottonwood has failed to present evidence that the activities challenged in this action and those previously resolved in *Cottonwood I* prove to differ significantly.

## II.   Defendants' request for the Court to enter a pre-filing restriction against Cottonwood.

Defendants argue that Cottonwood has repeatedly used motions for injunctions and temporary restraining orders as an abusive litigation tactic. (Doc. 76

13

at 9-10.) The Court recognizes that Cottonwood repeatedly has filed such motions in multiple cases, including in *Cottonwood Env't Law Ctr., et al. v. Edwards, et al.*, Case No. 2:20-cv-00028-BMM, and in the case presently before the Court. (*See* Doc. 58.)

The Court, exercising its discretion, declines to impose a pre-filing restriction against Cottonwood in this action. The Court cautions Cottonwood, however, that further motions made without new or differing facts will be construed unfavorably.

**ORDER**

Accordingly, **IT IS ORDERED:**

1. Cottonwood's interim motion for injunction pending appeal (Doc. 70) is **DENIED**.

2. Spanish Peaks's request for an order imposing a filing restriction (Doc. 76) is **DENIED**.

DATED this 13th day of February 2024.


Brian Morris, Chief District Judge
United States District Court